UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY DEWAYNE PITTMAN,<br>　　　　Plaintiff,<br>　　v.<br>CITY OF SAN JOSE, et al.,<br>　　　　Defendants. | Case No. 25-cv-07557-PCP<br><br>**ORDER DENYING PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 2 |

Pro se plaintiff Randy Dewayne Pittman filed this action against the City of San José and several city officials alleging violations of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. According to Mr. Pittman, the defendants unlawfully failed to ensure his access to an accessible parking spot within 200 feet of his apartment building. Concurrent with his complaint, Mr. Pittman filed an *ex parte* application for a temporary restraining that the Court converted into a motion for a preliminary injunction. He asks the Court to require the City either to create an accessible parking space on the street outside Mr. Pittman's building or to use its regulatory authority to compel his landlord to designate a space in the building's parking lot. For the reasons set forth below, the Court denies the motion for a preliminary injunction.

Mr. Pittman has also filed an application to proceed in forma pauperis, i.e., without paying the otherwise mandatory filing fee to initiate a lawsuit. Having granted that application, the Court must screen Mr. Pittman's complaint pursuant to 28 U.S.C § 1915(e)(2). Because Mr. Pittman's complaint "fails to state a claim on which relief may be granted," *id.*, the Court dismisses the case with leave to amend. Should Mr. Pittman fail to file an amended complaint by December 1, 2025, the Court will dismiss this case with prejudice.

**BACKGROUND**

Mr. Pittman is disabled due to a breathing impairment, which prevents him from walking more than 200 feet without risk of respiratory distress. He consequently requires accessible parking close to his residence and has a disabled parking placard issued by the state of Alabama.

Mr. Pittman resides in an apartment building in San José. The building has four parking spots, none of which is accessible and all of which are reserved for exclusive use by other tenants. The nearest designated disabled on-street stall is approximately 1,700 feet away from the building. Because of the lack of accessible parking next to his building, Mr. Pittman alleges that he recently collapsed on the street when he was carrying "heavy groceries" from a parking spot approximately 500 feet from his apartment building and did not have his rescue inhaler with him.

Mr. Pittman asserts that he "sought help repeatedly from City officials," including those named as defendants in this action, and asked that the City "designate an on-street disabled stall adjacent to" his apartment building and "modify its Code Enforcement program to require the landlord/property manager [of Mr. Pittman's building] to provide a compliant van-accessible on-site spot" or at least allow Mr. Pittman "to use an on-site space." According to Mr. Pittman, the City refused to do so "promptly."

Mr. Pittman filed this action against the City and several City officers in their individual and official capacities. He claims that by refusing to create an on-street disabled parking spot next to his building or to require his landlord to ensure Mr. Pittman's access to a spot in the building's parking lot, the City violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Mr. Pittman alleges that the individual officials are liable under 42 U.S.C. § 1983 for damages resulting from those violations.

**LEGAL STANDARDS**

To obtain a preliminary injunction, a plaintiff must ordinarily establish that (1) he "is likely to succeed on the merits," (2) he "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). But where, as here, a plaintiff seeks a "mandatory injunction" that "alters the status quo by requiring a party to take

action," the plaintiff bears a heavier burden "to show the facts and law *clearly* favor the moving party," not just that he is likely to succeed. *71Five Ministries v. Williams*, No. 24-4101, 2025 WL 2385151, at *5 (9th Cir. Aug. 18, 2025) (citation modified). Under both the ordinary and heightened standards, the strength of the merits of a plaintiff's claim "is the most important factor in the analysis[.]" *Id.* at *4.

28 U.S.C. § 1915 permits a court to authorize a plaintiff to proceed in forma pauperis if the plaintiff shows that he cannot afford the fees necessary to pursue an action. *See* 28 U.S.C. 1915(a)(1). The Court, however, must screen every civil action brought in forma pauperis under § 1915 and dismiss any case that is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000).

## DISCUSSION

### I. Mr. Pittman's motion for a preliminary injunction is denied.

Mr. Pittman moves for a preliminary injunction based on his claim that the City violated both Title II of the ADA and Section 504 of the Rehabilitation Act, which "are interpreted coextensively." *Payan v. L.A Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021). Because Mr. Pittman has not shown that the facts and law clearly favor him, he is not entitled to preliminary injunctive relief mandating that the City take the actions he requests. *See Youth 71Five Ministries*, 2025 WL 2385151, at *5.

First, Mr. Pittman argues that defendants violated Title II by refusing to immediately create a van-accessible handicap stall on the street outside his apartment building. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity[.]" 42 U.S.C. § 12132. To establish a violation of Title II, a plaintiff must show that "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949

3

1  (9th Cir. 2017) (quoting *Duvall v. City of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as
2  amended on denial of reh'g en banc* (Oct. 11, 2001)).

3       Mr. Pittman has not clearly established the second element—i.e., that defendants excluded him from participation in or denied him the benefits of the City's services, programs, or activities. Title II prohibits exclusion only from a public entity's *overall* programs or services, not from individual facilities. *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014). In other words, "a public entity need only provide program access by operating each service, program, or activity so that … , when viewed in its entirety, [it] is readily accessible to and usable by individuals with disabilities." *Id.* (citation modified). "Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available." *Id.* (quotation omitted). So while a city must ensure access to its overall program of public on-street parking, cities "have some flexibility" in making their parking programs accessible. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014). For that reason, the Ninth Circuit has held that a city need not "make structural changes to all existing on-street parking facilities" that are inaccessible, and may instead "make public on-street parking accessible by other means, such as by providing accessible on-street parking at other nearby sites." *Id.* at 1102–03. The Ninth Circuit has never suggested that overall program accessibility requires creating new accessible parking spots in specific locations requested by an individual based on their specific needs.

     Here, Mr. Pittman has not argued that the City has excluded him from its overall program of on-street parking. The record suggests the opposite. Mr. Pittman himself notes that there is accessible parking within one-third of a mile of his apartment building. He also mentions having been able to park in a public spot within 500 feet of his building. Further, as defendants explain, the City provides a process for disabled residents like Mr. Pittman to request the addition of new accessible parking spaces near their residences. *See* "FAQ List," City of San Jose, https://www.sanjoseca.gov/residents/advanced-components/list-detail-pages/faq-list/ (last visited October 15, 2025) [https://perma.cc/KAP4-VSSG]. Because the City considers requests only from

4

1    residents who possess disability placards or license plates that were issued by the California
2    Department of Motor Vehicles, *id.*, Mr. Pittman may not be eligible to submit a request, as he
3    appears to have only a disability placard issued by Alabama. But to the extent that requirement
4    excludes him from the City's service of considering requests for accessible parking, it is due to the
5    state in which Mr. Pittman previously resided, not "by reason of his disability," as required for a
6    Title II violation. *Updike*, 870 F.3d at 949.

7    Second, Mr. Pittman argues that defendants violated Title II by failing to use the City's
8    regulatory or enforcement authority to require his landlord to provide a parking space for him in
9    the apartment building's parking lot. But Title II applies only to public entities, not private actors.
10   *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015). Mr. Pittman offers no authority, and the
11   Court is aware of none, holding that Title II obligates a public entity like the City to use its
12   authority to compel private actors to comply with the dictates of Title II. Even assuming that the
13   Fair Housing Act requires Mr. Pittman's landlord to provide an accessible on-site parking space
14   for him, that requirement would be enforceable only by Mr. Pittman, the U.S. Department of
15   Housing and Urban Development, or the U.S. Attorney General. *See* 42 U.S.C. §§ 3612–14. So it
16   is far from clear that defendants *could* enforce such a requirement, let alone that Title II *compels*
17   them to do so.

18   Mr. Pittman cites *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004), for the
19   proposition that a city must modify its code-enforcement activities to accommodate individuals
20   with disabilities. *McGary* held that a city must reasonably modify its code-enforcement activities
21   when those activities operate to directly discriminate against an individual based on disability,
22   such as by denying the extra time needed for a disabled individual to clean his yard in order to
23   comply with a city's nuisance-abatement ordinance. *See* 386 F.3d at 1264–69. *McGary* did not
24   suggest that a city has an affirmative obligation under Title II to ensure that private actors do not
25   exclude individuals with disabilities from private services, programs, or activities where, as here,
26   the city took no action contributing to such exclusion.

27   In sum, Mr. Pittman has not clearly established that defendants excluded him from or
28   denied him the benefit of the City's overall programs, services, or activities; otherwise

5

1  discriminated against him; or had any obligation under Title II to compel his landlord's
2  accommodation of his need for an on-site accessible parking spot. He therefore has not shown that
3  the facts and law clearly favor him with respect to his Title II claim. Because Title II and Section
4  504 are interpreted coextensively, *Payan*, 11 F.4th at 737, Mr. Pittman has also failed to show that
5  the facts and law clearly favor him as to his Section 504 claim. Because Mr. Pittman has not
6  shown a clear likelihood of success on the merits of either of his claims, the Court need not
7  consider the remaining *Winter* factors. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).
8  The Court therefore denies Mr. Pittman's motion for a preliminary injunction.

### II. Mr. Pittman's complaint fails to state a claim and is dismissed with leave to amend.

For the same reasons Mr. Pittman has not shown that the facts and law clearly favor him, his complaint "fails to state a claim on which relief may be granted," requiring dismissal under 28 U.S.C § 1915(e)(2). Mr. Pittman's complaint contains no allegations suggesting that he has been excluded from the City's overall program of public parking due to his disability. To the contrary, while he alleges that he has been unable to park immediately adjacent to his apartment building, Mr. Pittman's complaint admits that he is able to park in spaces roughly 500 and 1,700 feet from the building. Nor does the complaint allege that defendants contributed to any private discrimination that Mr. Pittman allegedly experienced based on his landlord's refusal to provide accessible parking. Mr. Pittman therefore has not stated a claim for disability discrimination under either Title II or Section 504. *See Updike*, 870 F.3d at 949; *Payan*, 11 F.4th at 737. Because Mr. Pittman is proceeding pro se, the Court dismisses the complaint with leave to amend. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Pittman's motion for a preliminary injunction, screens and dismisses his complaint, and grants him leave to amend his complaint to cure the deficiencies identified above. Failure to file an amended complaint by December 1, 2025 will result in dismissal of this case with prejudice.

Finally, the Court notes that since the filing of this lawsuit Mr. Pittman has included both the judge assigned to this case and the judge's courtroom deputy on several email communications

addressing the substance of Mr. Pittman's claims. Such communications to the Court are improper. Going forward, any communication to the Court regarding the merits of this matter or any other matter assigned to the Court must be made through a court filing that is compliant with the Federal Rules of Civil Procedure, the Civil Local Rules, and this Court's Standing Order for Civil Cases.

**IT IS SO ORDERED.**

Dated: October 23, 2025

P. Casey Pitts
United States District Judge